## Case No. 10,020.
### The NARRAGANSETT.
[Olc. 388.] [1]

District Court, S. D. New York.    Sept., 1846.[2]

COLLISION — DAMAGES — FULL RECOMPENSE — SALVAGE EXPENSES—COMMISSIONER'S REPORT.

1. Damages caused by a collision will be awarded against the colliding vessel, adequate to the full recompense of the injured vessel and cargo.

2. The loss of the use of the injured vessel whilst undergoing repairs is so directly consequential to the collision as to be entitled to compensation.

3. The owners of the injured vessel will be allowed salvage expenses and other charges necessarily paid by them in rescuing the vessel and cargo from perils they were placed in by the collision.

[Cited in The Rhode Island, Case No. 11,-740a.]

4. Services of a salvage character, expended in saving and restoring the injured vessel and cargo, will be compensated by salvage rewards, and not limited to a quantum meruit for mere work and labor.

5. A bona fide adjustment of such claims and charges between parties interested in the vessel and cargo, will be accepted by the court as a proper mode of fixing the value of the services.

6. The commissioner's report of damages, when parties have been fully heard before him with their proofs, and no question of law is involved in his decision, will be adopted by the court, unless palpable errors or inadvertencies have been committed by him.

The commissioner, in his report of the damages sustained by the libellants by occasion of the collision sued for in this cause [see Case No. 10,019], made allowances for salvage compensations paid by the libellants to other persons and vessels for aiding to save and secure their vessel and cargo wrecked by the collision; for all direct damages and injury to the sloop and cargo, and also the consequential damages sustained by loss of the use and services of the vessel during the time she was out of employment for the purpose of repairs, &c. The claimants excepted to all these classes of allowances.

F. B. Cutting, for libellants.

J. P. Hall and W. M. Evarts, for claimants.

BETTS, District Judge. The report of the commissioner made in the cause, pursuant to the decree of the court upon the merits [Case No. 10,019], having been filed, the claimants excepted to it in various particulars, but more generally the exceptions call in question the amount of allowances stated than the principles adopted by the commissioner in making them.

The case was submitted to the court on the evidence before the commissioner, and written arguments of the counsel. As a general rule, a commissioner's report of damages upon the facts only, will be adopted by the court, unless errors or inadvertencies in his valuation are clearly established by the excepting party. It will be useless, in this case, to set forth twenty or thirty exceptions in detail, which these claimants have filed to the report. The essential ones will only be considered. Exception is taken to the allowances of a salvage compensation made two sloops, (the Emperor and Elector,) employed by the libellants to assist in raising the wrecked vessel and cargo, and towing them into Black Rock harbor. It rests on two objections: first, that no salvage service was rendered by the vessels; and second, that the allowances are exorbitant as a quantum meruit. The vessels were engaged in the service but a short time, and neither they or the crews were exposed to hazardous or severe services. These particulars do not, however, determine the character of the service, nor necessarily withdraw it from the class of salvage claims. Judge Story held, in The Emulous [Case No. 4,480], that whenever the service has been rendered in saving property on the sea, the service is, in the sense of the maritime law, a salvage service; and in a later case he adds, that compensation for such services is not to be estimated upon the footing of a mere quantum meruit for work and labor upon the dry principles of the common law, but upon the footing of a quantum meruit upon the enlarged principles and policy of maritime jurisprudence in salvage causes. Bearse v. 340 Pigs of Copper [Id. 1,193]. The rule in the English admiralty is of the same tenor. Sir John Nicholl rewarded as a salvage service the taking of an anchor to a ship coming into the Downs, by a lugger under contract to procure it from Dover and put it on board the ship. The anchor was necessary to the safety of the ship in her then condition. The lugger encountered heavy wind in a dark night in taking out the anchor. It was objected that the service was slight, and not of a salvage character. The judge held this a salvage service not to be paid for merely as work and labor; when fairly and honestly rendered, it is to be liberally rewarded without a minute inquiry into the quantum of labor. The Hector, 3 Hagg. Adm. 90. In another case he says, salvage reward is not a mere question of work and labor—not a mere calculation of hours. The Industry, Id. 203. In The Clifton, Id. 121, he enumerates the chief ingredients of a salvage service, some of which are prominent in the present case, with the reservation that where none or scarcely any of those ingredients exist, the compensation can hardly be denominated a salvage compensation; it is little more than a mere remuneration pro opere et labore. These cases present a succinct recapitulation of the doctrines which have always prevailed in this court, and sufficiently mark the distinction between salvage services and pilot services, or ordinary services of work and labor.

1 [Reported by Edward R. Olcott, Esq.]
2 [Affirmed in Case No. 10,017.]

In neither of the cases above cited was the situation of the salved property so perilous as that of the Corinthian and her cargo, nor were the services rendered greater in extent or hazard to the salvors or their vessels. The Emperor and Elector had been laid up; crews had to be collected, to man and fit them for this service; yet they were made ready and got alongside the wreck within three or four hours after the first notice and application to them. This was mid-winter. The wreck was found, when the sloops got to her, capsized and filled with water, and by their assistance she was righted and towed by them into Black Rock. The owners of the sloop attached the Corinthian at that place for their compensation, and their claims were adjusted by her master, with the approval of Mr. Jones, agent of the underwriters upon her, at $800. Those parties thought the compromise advantageous to all concerned in the vessel and cargo. An adjustment of salvage services by parties on the spot, who are dealing for their own interest, though not binding on parties not present or represented, will yet be regarded favorably by maritime courts, as affording probably a safer rule of valuation than can be gathered from the depositions of witnesses.

In view of the probable risk of the enterprise, and the value of the property saved, and the promptitude with which the succor was rendered, I am not inclined to disturb that adjustment. I concur in the judgment of Mr. Jones and the master of the wreck, that the arrangement was fair and just under the circumstances. The exception to this point is accordingly overruled.

The exception to the second and third items, being allowances to the schooners Union and Dispatch, to each $120, is in part well sustained. Those charges include a compensation for freight carried, and also for employment per diem, to search for the wrecked property. The vessels cannot come in on the footing of salvors upon claims for unsuccessful efforts to rescue or find the wrecked property. Their charges must be limited to services rendered by them beneficial to the wreck. The contract made with them by the insurance offices to search for the wreck cannot rightfully be thrown on the cargo or vessel, when neither is proved to have derived any advantage from it. [Talbot v. Leeman] 1 Cranch [5 U. S.] 1; [The Alerta v. Moran] 9 Cranch [13 U. S.] 367; Clarke v. The Dodge Healy [Case No. 2,849]; The Henry Ewbank [Id. 6,376]. I do not think the vessels should be restricted to mere ordinary freight; it is reasonable and proper, under the circumstances of their employment, to allow a per diem compensation for the time occupied in loading, transferring and re-loading the cargo. This was a special undertaking very different from the regular business of carrying freight; but, on the evidence, I consider $15 per day a reasonable remuneration for the time employed transporting and securing the cargo, and raise the allowance in the report to that amount.

The court does not intend, by this distinction, to discountenance the employment of vessels by the day in efforts to aid wrecked vessels to avoid salvage charges by others; nor to suggest that those expenditures may not be taken in account on a general average between the ship-owner and freighters. But I discover no principle which permits a charge to be laid on the vessel or cargo for a precautionary employment of other vessels, unattended with actual aid to the property in distress. Before these sloops discovered the wreck, she was safely in port, and their connection with it was to wait until the cargo could be unladen and transferred to them, and then to transport it a distance of seventy miles to New-York. The testimony does not fix clearly the time the sloops were engaged in the carriage of the cargo, but, without creating the expense of sending the case back to the commissioner for new proofs to that point, I shall assume, upon the evidence before me, that four days to each sloop would cover all the time reasonably required in the service performed, and shall accordingly reduce the allowance of the commissioner in these particulars to $60 for each vessel.

I think the exceptions to the allowance of items 4, 5, 12, 13, 16 and 17 are well taken. The decree contemplates only the payment of salvage reward, and though in the mode of stating those charges some of them would appear to include services which might fairly fall under that head, yet the proofs do not specify the quality or extent of those acts, so that the court can discriminate and apply a proper compensation to each. Items 4, 5 and 12 are of that character, and must accordingly be rejected. The other particulars embraced in those items, and the accompanying charges in 13, 16 and 17, not being any of them proved to have a necessary or just relation to the salvage of the property wrecked, must also be rejected. The damages decreed against the steamboat compose a fund out of which each party sustaining losses is to take his proper share. The report appears to have been made up upon the assumption that the steamboat contributing this fund is also bound to pay the charges of settling between the common claimants their respective interests in it. This is a mistake. The owners of the steamboat have no concern with, and cannot rightfully participate in that question. Accordingly, they ought not to be subjected to any of the charges incurred in making that distribution.

The principle involved in the last exceptions allowed will also dispose of that to the charges of R. Gibbs, Jr., for travelling expenses. It is not proved that there was any necessary or reasonable relation between

those services and the salvage of the wrecked property. Upon the testimony they are rather to be referred to the condition of the claims of the respective libellants and underwriters between themselves, and would more appropriately belong to general average allowances than salvage claims. These items are accordingly disallowed. The exception to the allowance made for injury to sails, cordage bill, painting and rigging, in all, $319.26, must be overruled. The testimony of Sheppard. Watkins and Hillman sufficiently supports these charges. The collision rendered it necessary to put this class of repairs on the vessel, and although the proof is not positive that they no more than reinstated the vessel in the condition she was before collision, yet the moderate amount charged, and the proof that such reparations were necessary, is evidence enough, in the first instance, to support the claim, none being offered by the claimants tending to show an overcharge. 2 Hagg. Adm. 90. I shall, therefore, allow that amount.

The last point in dispute is the allowance of $500 for the value of the services and use of the vessel lost to the owners whilst she was undergoing repairs. This is a subject for valuation and allowance, because the owner of the injured vessel is entitled to a full reparation of the injuries and losses caused by the collision. [The Apollon] 9 Wheat. [22 U. S.] 362; 2 Hagg. Adm. 30. Questions of consequential damages are necessarily vague in their nature. It is not to be expected that the evidence can fix with exactness the time indispensable for the repair of the injured vessel, nor where the work could be most advantageously done, or the value of her use to the owner during the period of her disablement. Those particulars must rest, in a good degree, upon estimates; and although there is a diversity of opinion with the witnesses, I think the conclusion adopted by the commissioner is reasonably sustained by the proofs, and accordingly I shall allow his report in this behalf to stand.

These rulings upon the exceptions will require $559.05 to be deducted from the sum of $2,147.87, reported payable to the libellants, and the decree will be entered in affirmance of the residue of the report, with costs.

[On appeal by the claimants to the circuit court, the final decree of the district court was affirmed. Case No. 10,017.]